506 P.2d 648

STATE of Arizona, Appellee,

v.

Arthur John JUNG, Appellant.

No. 2 CA–CR 308.

Court of Appeals of Arizona,
Division 2.

Feb. 22, 1973.

Rehearing Denied March 28, 1973.

Review Denied April 24, 1973.

258

Gary K. Nelson, Atty. Gen. by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Laber, Lovallo & Colarich, Ltd. by Joseph A. Lovallo, Tucson, for appellant.

HOWARD, Judge.

This appeal challenges the validity of a search warrant and the sufficiency of the evidence to support defendant's conviction of unlawful possession of narcotics for sale.

## VALIDITY OF SEARCH WARRANT

On September 10, 1971, a state narcotics agent submitted an affidavit to a justice of the peace in support of a search warrant. Defendant contends that this affidavit suffered from constitutional infirmity thus invalidating the search warrant issued pursuant thereto. Both parties

agree that we must confine our consideration to the affidavit alone since no other evidence was presented to the issuing magistrate at the time the search warrant was issued. State v. Allen, 9 Ariz.App. 196, 450 P.2d 708 (1969); State v. Greenleaf, 11 Ariz.App. 273, 464 P.2d 344 (1970). The affidavit recites in pertinent part:

"The undersigned being first duly sworn deposes and says:

That he (has reason to believe) that (on the premises known as) 131 West Rillito, Tucson, Arizona, a white stucco house with a white outbuilding with a tin roof, surrounded by a chain link fence located at the southeast corner of Rillito and 10th Avenue. in the City of Tucson, County of Pima State of Arizona, there is now being concealed certain property, namely, a useable quantity of marijuana. The possession of which property is a felony; is being used as the means of committing a felony and which property is possessed with the intention of using it as the means of committing the crime of Possession of Marijuana. And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

Your affiant, A. Carrillo, has spoken with a confidential and reliable informant who has stated that within the past 72 hours the informant has seen a useable amount of marijuana at the residence. This informant has established reliability by giving information on narcotics users and dealers that through an independent investigation has proven to be true. The informant has on two separate occasions made purchases of narcotics under controlled circumstances. The informant has given information that has resulted in the arrest of two persons and a large amount of drugs seized. The informant is knowledgeable in the use and sale of narcotics and the peculiarities of narcotic users and dealers. The informant has stated that he or she is in fear of his or her life if his or her identity were revealed. For this

reason your affiant asks that the informant be kept confidential. Your affiant further asks that a search warrant for the residence be issued."

Defendant claims this affidavit did not satisfy the requirements enunciated in Aguilar v. State of Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In particular, he contends it was insufficient to establish probable cause to believe that the contraband was still at the described premises at the time the search warrant was issued, it failed to establish probable cause to believe that the contraband was in an outbuilding, it lacked specificity of description as to the place to be searched, and it failed to establish the reliability of the informant.

■ Defendant argues that the affidavit was insufficient in that it merely recited that the informant had observed the contraband on the premises "within the past 72 hours" and did not indicate when the informant's information was obtained by affiant. In State v. Kelly, 99 Ariz. 136, 407 P.2d 95 (1965), a like contention was advanced and rejected by our Arizona Supreme Court:

"The contention that the affidavit is insufficient in regard to the date the information was received from the informant, and in regard to the date the informer obtained his information, is not well founded. The affidavit is positive and definite in that it states the informant had 'recently' seen defendant in possession of narcotics at both the East Sheridan address and in the Fiat automobile. Any more definite time might reveal the identity of the informant." 99 Ariz. at 141, 407 P.2d at 98.

See also, Annot., 100 A.L.R.2d 526 § 5 [c] (1965).

■ Defendant assails the affidavit because of lack of specificity with respect to the premises to be searched. He argues that since the informant had stated that he had seen marijuana "at the residence", there was no probable cause to search the

shed where the contraband herein involved was seized. He overlooks the fact, however, that the residence was described as "a white stucco house with a white outbuilding with a tin roof, surrounded by a chain link fence". There was no showing that the white stucco house and its outbuilding constituted more than one property—in fact, the same street address applied to both. We are of the opinion that the informant's observation of marijuana "at the residence" furnished probable cause to believe that marijuana was either in the stucco house, the shed or both. An affidavit in support of the search warrant need not be drafted with the precision of a model legal instrument nor interpreted in a hyper-technical manner, State v. McMann, 3 Ariz.App. 111, 412 P.2d 286 (1966); Halpin v. Superior Court of San Bernardino County, 6 Cal.3d 885, 101 Cal.Rptr. 375, 495 P.2d 1295 (1972), and issuing magistrates are not to be confined by restrictions on the use of their common sense. City of Tacoma v. Mundell, 6 Wash.App. 673, 495 P.2d 682 (1972). The magistrate was not required to construe the word "residence" as meaning only the white stucco house.

We agree with defendant that an affidavit must identify the premises to be searched with sufficient particularity. We hold that the description of the premises, as set forth above, satisfied this requirement. *See,* State v. Braun, 209 Kan. 181, 495 P.2d 1000 (1972). Nor does the fact that the outbuilding was described as being white with a tin roof, when in fact it was gray with a tin roof, invalidate the warrant. State v. Reynolds, 11 Ariz.App. 532, 466 P.2d 405 (1970). The description in a search warrant of a place to be searched is sufficient if the officer can, with reasonable effort, ascertain and identify the place intended to be searched with certainty. State v. Sero, 82 N.M. 17, 474 P.2d 503 (1970). Since there was only one outbuilding, there is no question but that the officer would be able to identify it.

Defendant finally attacks the validity of the search warrant on the ground that the affidavit failed to satisfy the second prong of the test laid down in the *Aguilar-Spinelli* duo, *i. e.,* some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the affiant concluded that the informant's information was reliable. He claims that the affidavit failed to show how the informant knew the marijuana was at the residence. There is no merit to this argument since the affidavit stated that he had observed it there. Defendant also claims that it is deficient in that it does not state that the informant was familiar with the physical characteristics of marijuana, when he was at the residence, where at the residence he saw the substance, and in whose possession it was, and whether he was close enough to the substance to make positive identification of it as marijuana. He cites no authority for his position and we find no case that requires such specificity. In fact, were such details required the identity of the informer might be disclosed. State v. Kelly, supra.

The affidavit shows the informant actually saw the narcotics and had given information several times in the past which proved correct and led to several arrests and the seizure of a large amount of drugs. This is sufficient to meet the standards of *Aguilar* and *Spinelli.* State v. Snyder, 12 Ariz.App. 142, 468 P.2d 593 (1970), cert. denied, 400 U.S. 1001, 91 S. Ct. 475, 27 L.Ed.2d 452 (1971).

We find no error in the trial court's ruling in favor of the sufficiency of the affidavit and in denying defendant's motion to suppress evidence seized as a consequence of the subsequent search pursuant to the search warrant.

## SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence on the grounds that the prosecution proved nothing more than his presence where narcotics were found, and

failed to prove his intent to sell same, and his lack of a license to sell or possess narcotics.

We agree, and the state concedes that "mere presence" at a location where narcotics are found is insufficient to establish knowledgeable possession or dominion and control over narcotics. State v. Van Meter, 7 Ariz. App. 422, 440 P.2d 58 (1968). The evidence presented here, however, indicates more than "mere presence".

When the officers entered the shed described in the search warrant, they found defendant and a woman companion lying on a bed. A baggy containing marijuana was in plain view alongside the bed and several "roaches" were in an ashtray. Approximately two feet from the bed was three-drawer nightstand. A bag containing 1.69 grams of cocaine was on top of the nightstand in plain view. In the bottom drawer of the nightstand, the officer discovered a bag containing six baggies of cocaine and one of marijuana. The one of marijuana weighed 6.17 grams and the six of cocaine weighed 1.69 grams, 24.64 grams, 24.1 grams, 23.08 grams, 23.05 grams, and 23.07 grams respectively.

On a shelf in plain view was a precision scale customarily used for measuring small quantities of powders, gun powder or narcotics. Also in plain view were a postage scale, a dish used in a gram scale, and a square-bladed knife generally used to scoop quantities of powder onto scales. Both the dish and the knife had granules of cocaine adhering to them.

In another drawer of the nightstand, the officer found a passport and immunization record belonging to the defendant. In one of the drawers, he also observed some underwear and socks. A suitcase belonging to the defendant, containing only a metal hanger, was also found in the room. The defendant had slept in the shed the previous night (September 9th) and according to his passport, had re-entered the United States on September 6th. When asked by an officer as to where he resided, the defendant responded: "131 West Rillito".

The defendant took the stand in his own defense. He admitted ownership of marijuana on the floor alongside the bed. He also admitted that both the passport and immunization record belonged to him and that he had been traveling all over South America, spending most of his time in Peru. He denied knowledge of the cocaine on top of and inside the nightstand.

The state presented evidence that the weight of the marijuana in the bag lying on the floor was 15.76 grams and that the average weight of marijuana cigarettes is about one-third of a gram. There was also testimony that between 50 to 70 milligrams of cocaine is used to make up one paper and that such weight was customarily used for distribution.

We believe the totality of the evidence presented here, to wit, the fact that defendant was occupying the premises and had moved in his personal items, his smoking of marijuana, his admitted possession of marijuana, and the presence of his personal documents in the drawer of the nightstand, all support an inference to warrant a finding of constructive possession. State v. Parra, 104 Ariz. 524, 456 P.2d 382 (1969). Defendant also contends the prosecution failed to prove he had knowledge of the narcotic character of the contents of the bags of cocaine—the one in plain view and the other in the drawer of the nightstand. For all he knew, he argues, the substance could have been sugar, which it closely resembled. We find no merit in this argument. His admission of possession of marijuana, the packaging and location of the cocaine would support an inference contrary to defendant's contention.

Furthermore, we believe the evidence was sufficient to support a conviction of possession for sale notwithstanding absence of evidence of any sale or transaction by defendant with respect to the narcotics. The quantity of narcotics found in defendant's possession, its packaging, its location, and the paraphernalia for measuring and weighing were all circumstances from which it could properly be inferred

that it was possessed for sale rather than for personal use. State v. Arce, 107 Ariz. 156, 483 P.2d 1395 (1971); State v. Aikins, 17 Ariz.App. 328, 497 P.2d 835 (1972); State v. Castro, 13 Ariz.App. 240, 475 P.2d 725 (1970).

 Defendant's final contention concerning the requisite quantum of proof is that the state failed to prove that he did not possess a license. We have recently held, however, that the state is not required to negative statutory exceptions—such exception is a matter of defense where it is not an ingredient of the offense. State v. Quandt, 17 Ariz.App. 33, 495 P.2d 158 (1972). Other jurisdictions which have considered the question have adopted the same view. *See*, State v. Conley, 32 Ohio App.2d 54, 288 N.E.2d 296 (1971); State v. Bean, 6 Or.App. 364, 487 P.2d 1380 (1971); State v. Karathanos, 493 P.2d 326 (Mont.1972); State v. Braun, supra.

. For the foregoing reasons, the judgment is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.